THE AMERICAN RAILROAD COMPANY OF PORTO RICO, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO ET AL., Respondents.

No. 289. Argued January 17, 1944.—Decided May 10, 1944.

*Mariano Acosta Velarde, Federico Acosta Velarde,* and *Donald R. Dexter* for petitioner. *Joaquina Pérez Cordero, A. de Jesús Matos,* and *Joaquín Correa Suárez, Legal Advisers of the State Insurance Fund,* for respondents.

Mr. Chief Justice Travieso delivered the opinion of the court.

The facts giving rise to the present appeal are as follows:

In 1941 several workmen of the American Railroad Company claimed the payment of wages earned under the Federal Wage and Hour Law. On November 4, 1941, said claim was settled. The company paid the sum of $700,000 to be distributed among the claimants in payment of the difference between the wages already received by them and those to which they were entitled pursuant to the Federal Act.

Several injured workmen, who had been paid per diems based on the wages which they earned on the day of the accident, asked the Manager of the State Insurance Fund to readjust said per diems and compensations in conformity with the wages as raised by the amount corresponding to each of the claimants by virtue of the aforesaid settlement. Thereupon, in May 1942, the manager made an investigation of the payrolls of the company. The inspectors appointed by the manager informed the latter that the company had failed to include in the payrolls corresponding to the fiscal years 1938–39, 1939–40, 1940–41, and part of 1941–42 the sum of

$659,999.33 paid to the workmen as wages due. The manager then levied additional premiums on the company for said years, as follows:

| | |
|---|---:|
| Oct. 28, 1938, to June 30, 1939 (245 days) | $146, 733. 07 |
| Year 1939–40 (365 days) | 218, 602. 31 |
| Year 1940–41 (365 days) | 218, 602. 31 |
| July 1, 1941 to Nov. 4, 1941 (127 days) | 76, 061. 64 |
| Total | $659, 999. 33 |

On May 21, 1943, the Manager of the Fund notified the petitioning company of the report presented by his auditors in connection with the period between January 1 and June 30, 1942, wherein there was included, as wages paid, the sum of $20,554.10 which had been paid to the workmen subsequent to said period, in conformity with the above-mentioned settlement entered into by the company and the claimant workmen.

Feeling aggrieved by the decisions of the manager, the company appealed to the Industrial Commission. On November 1, 1943, the commission rendered its decision affirming the two decisions of the manager and upon a reconsideration being sought, the same was denied. The company thereupon took the present appeal.

In support of its petition to review and set aside the decisions appealed from, the petitioner assigns in its brief seven errors which in its opinion were committed by the Industrial Commission. The questions raised by said seven assignments and which are before us to be considered and decided are as follows:

██ Did the Manager of the State Insurance Fund act lawfully in levying on the petitioner the premiums based on the amounts paid to the workmen, by virtue of a settlement of a claim for unpaid earned wages, taking into account that said sums were paid subsequently to the dates when the payrolls corresponding to the period from October 28, 1938, to June 30, 1942, were drawn up and paid?

The petitioner contends that the manager is only authorized to assess and collect the premiums corresponding to a particular fiscal year, taking as a basis the payrolls of wages actually paid by the employer during the fiscal year prior to the levying of the premiums. In support of its contention it invokes the provisions of §§25 to 28, inclusive, of Act No. 45 of April 18, 1935, Workmen's Compensation Act.[1]

The arguments set forth by the petitioner are not convincing. It is true that according to a literal and strict construction of said Sections, the manager must take as a basis for assesing and levying the annual premiums to be paid by the employer "the total amount of wages paid . . . during the year prior to the levying of the premiums"; that the premiums shall be fixed as soon as the manager receives the report provided by §27 of the act; and that in the case at bar the manager assessed and collected from the petitioner the premiums corresponding to the years in controversy, taking as a basis for each one of said years the

---

[1] "Section 25.—The Manager of the State Fund is hereby authorized, empowered, and directed to assess and levy on every employer of workmen or employees affected by this Act, annual premiums determined in accordance with the preceding section, on the total amount of wages paid by said employer to workmen and employees who were, or would have been, entitled to the benefits of this Act during the year prior to the levying of the premiums, if this Act had been in force; Provided, That said premiums shall be collected semi-annually, in advance, by the Treasurer of Puerto Rico through internal-revenue collectors and such government officials as the Treasurer may, by regulation, authorize.

"After said premiums have been collected, they shall be deposited in the Treasury of Puerto Rico, in the State Insurance Fund established by this Act.

"The premiums shall be fixed as soon as the duplicate report hereinafter referred to is received in the office of the Manager, the basis therefor to be the total amount paid by the employer for wages of laborers employed by him during the previous year, who were or would have been entitled to the benefits of this Act. Should an employer fail to pay the total amount of the premiums legally levied on him within the time fixed by the Manager, the latter may grant an extension of thirty (30) days so that the employer may make the payment, which payment shall be an indispensable requirement so that the Manager may make any insurance policy effective.

"Any employer who, prior to July 1 or January 1 of any year, ceases to be subject to the provisions of this Act, may be excused from the payment of

total amount of the wages paid during the preceding year. However, we find nothing in the cited Sections, nor is there any provision in the Workmen's Compensation Act, which forbids the Manager of the State Fund to levy and collect premiums on the wages that an insured should have paid his workmen under the statute in force, during a fixed year, and which he failed to pay until after the expiration of said year.

The Federal Act known as "Fair Labor Standards Act," approved in 1938, became effective in Puerto Rico in the second semester of that same year. That said Act is applicable to the petitioner herein is an uncontrovertible fact. The Railroad Company expressly admitted this in the agreement entered into on November 7, 1941, by itself and more than one thousand one hundred workmen, to settle a claim filed by said workmen "for unpaid earned wages," under the Act of Congress of 1938 of Fair Labor Standards. Upon making

---

premiums for the following semester or semesters by giving the notice and proof required by the Manager of the State Fund that he will not be subject to the provision of this Act.

"Any employer subject to the provisions of this Act during any part of a semester shall pay the premiums for the whole of said semester, but he shall be entitled to such reimbursement, if any, as provided in the following section; *Provided,* That in such cases, reimbursements may be made at the expiration of the semester for which said premiums were paid.

"Section 26.—At the end of each fiscal year, the Manager shall compare the payroll of each employer paying premiums in accordance with this Act for such fiscal year, with the payroll of the preceding fiscal year on the basis of which the premiums were assessed, levied and collected; and if the payroll for the year during which the insurance was effective is greater than that of the previous fiscal year for which said premiums were assessed, levied, and collected, the Manager shall assess and levy, and the Treasurer shall collect, on the difference, as provided in this Act, additional premiums in the same manner and on the same basis as the original premiums were assessed, levied, and collected; and if the payroll for the year during which the insurance was effective is less than that of the previous fiscal year for which the premiums were assessed, levied, and collected, the Manager shall refund from the State Fund the proportion of the premiums corresponding to the difference between the actual payroll for the year

payment of the amount due to each one of the claimants, the company demanded a receipt which in its pertinent part reads as follows:

"I. . . . have received from the American Railroad Company of Porto Rico the sum of . . . dollars, in payment of the difference between the wages earned by me from October 24, 1938, until November 4, 1941, inclusive, and the wages to which I was entitled pursuant to the Federal Fair Labor Standards Act approved in 1938, which payment has been made to me and accepted under the terms and conditions of the contract executed on November 4, 1941."

Therefore, it its clear that by the express terms of the contract of settlement and of the receipt attached thereto, the petitioning company admitted that the amounts which it paid to each one of the claiming workmen, subsequent to November 4, 1941, are the same amounts to which said workmen were entitled pursuant to the Federal Act and which the Railroad Company was bound to pay to them as part of their wages during the period covered from October 24, 1938, to November 4, 1941.

---

during which the insurance was effective, and the year for which said premiums were assessed, levied, and collected.

"Section 27.—It shall be the duty of every employer to file with the Manager, not later than July 15 of each year, a duplicate statement, under oath, showing the number of workmen employed by said employer, the kind of occupation or industry of said workmen, and the total amount of wages paid to said workmen or industry during the preceding fiscal year. The premiums prescribed in Section 25 and 26 of this Act shall be computed on the total amount of wages declared in said statement; *Provided,* That every employer employing workmen covered by this Act for any term or part of a semester shall file the aforesaid duplicate statement under oath, showing the number of workmen or employees employed, the kind of occupation, and the estimated wages to be paid to said workmen or employees, and on such sum the premiums to be paid by the employer shall be computed; and upon the termination of the work of said workmen or employees the employer shall file a sworn statement like the one above mentioned, showing the total amount of wages paid on which sum the corresponding liquidation shall be made; and if this payroll is greater than the previous one, the Manager shall assess and levy, and the Treasurer shall collect, as provided in this Act, additional premiums on the difference, in the same form as that hereinbefore prescribed.

"Should the employer fail to file said statements on the dates specified above, he shall be guilty of a misdemeanor punishable by a fine of not less than fifty (50) dollars nor more than five hundred (500) dollars, in the

It is unquestionable that if the petitioner had paid to its workmen the wages fixed by the Federal Act, at the proper time, the Manager of the Fund would have been able to assess and levy the premiums in strict compliance with the applicable provisions of the local statute. The annual premiums must be fixed on the total amount of the wages paid by the employer to his workmen during the year prior to the levying of the premiums. It is so provided by §25 of the Insular Act. However, in our opinion, it was not the intention of the lawmaker to enact a statute so strict and inflexible as to provide that the only amount upon which the levying of the premiums could be based is the amount actually or really paid by the employer to his workmen during the preceding year and to prohibit the taking as a basis the amount that should have been paid pursuant to the statute but which was not paid at the right time through the employer's own fault, negligence, or error.

The plan for workmen's insurance against labor accidents and occupational diseases can not exist without a sol-

discretion of the court. Any district court, on motion of the Manager of the State Fund, shall order the employer to present the aforesaid statements within a peremptory term; and if he fails to present such statement, the disobedience to said order shall constitute contempt and shall be punished as such.

"Any employer who has been covered by the State Fund up to the end of the preceding fiscal year and is covered beginning with July 1 of the current year, shall also be covered during the period from July 1 to July 15 granted by this Act to file the payroll or statement; *Provided,* That every employer who has not presented the statement to which this section refers within the term herein fixed, shall be considered as an uninsured employer.

"The Manager and those employees having direct and specific intervention in the assessment, collection, and investigation of premiums are expressly empowered to administer the oath required by this Act and shall exercise all the powers and rights conferred on the internal-revenue agents of the Department of Finance.

"Any employer considering himself not obliged to comply with the requirements of this section shall state the fact, under oath, before the Manager of the State Fund.

"The insurance of each employer by the State shall be in force immediately after this payroll or duplicate statement has been filed in the office of the Manager of the State Fund; together with the amount of the premiums corre-

vent fund; and the solvency of the State Insurance Fund can not be maintained if the manager fails to collect from the employers the premiums on the amounts earned by their workmen during each fiscal year, disregarding the date on which payment was made to the workmen. The underlying principle of §25 of the Act is to render possible the collection of the premiums in advance, taking as a basis the total amount of wages paid during the preceding year. Section 26 provides the proceeding under which the employer pays and the manager collects the premiums corresponding to a specific fiscal year, on the basis of the total amount paid to the workmen during that same year. In accordance with said Section, at the end of the fiscal year the manager shall compare the payroll for such fiscal year with the payroll of the preceding year on the basis of which the premiums of the year under liquidation were tentatively assessed. If the payroll for this year is greater than that of the previous year, the manager shall assess and levy and the Treasurer shall collect, on the difference, additional premiums; and if

---

sponding to the percentage of the wages declared in said statement, in accordance with the rates fixed by the Manager; *Provided,* That any accident that occurs before payment of said premiums is made shall be considered as a case of an uninsured employer, unless the employer pays within the term fixed by the Manager of the State Fund, in which case, the insurance shall begin to run from the date on which the employer filed the payroll or statement in the office of the Manager.

"On receipt of payment from an employer, the Manager of the State Fund shall forward to said employer the receipt for such payment, which receipt shall be *prima facie* evidence of said payment of the premium and of said employer's compliance with the provisions of this Act. Until such payment is made by the employer, he shall not be entitled to the immunities provided by this Act in regard to such injuries, diseases, or death as may be suffered by the workmen or employees of such employer during the period covered by the payment of such premiums, and the workmen or employees of such employer shall not be entitled to the benefits granted by this Act when they suffer such injury, disease, or death, but they shall have the right to file such claims against the employer in accordance with the procedure established for cases of uninsured employers.

"Register of Workmen and Employers.

"Section 28.—It shall be the duty of every employer entitled to the benefits of this Act, to keep a complete register in accordance with such regulations as may be prescribed by the Manager, showing the name of each one of

the payroll is less than that of the previous year, the manager shall refund to the employer the difference in his favor. The application of said Section makes possible the liquidation of the premiums corresponding to each fiscal year, on the basis of the total amount in the payroll of the wages earned and paid on said year, and it prevents the Fund from enriching itself at the expense of the employer and vice versa.

"Equity regards that as done which ought to be done." This old and wise maxim seems apposite to a case like the present one. The petitioner finally performed—*nunc pro tunc*—on November 4, 1941, that which it ought to have done at the time when it paid its workmen for work accomplished during the years 1938 to 1942. It is only fair and just that we consider the payments made in 1941 as if they had been made at the time when they should have been made under the law, for all legal purposes, including the assessment, levying, and collection of the premiums corresponding to the amounts thus paid. To hold the contrary would be equivalent

---

said workmen or employees, the age, the sex, and the nature of the work performed by, and the wages paid to, each one of them; *Provided,* That if any employer fails to comply with these requirements, he shall be guilty of a misdemeanor punishable by a fine of from fifty (50) to five hundred (500) dollars.

"The Manager of the State Fund may order an examination to be made of all the payrolls and of the account books of such employers by any representative duly authorized by him, and it shall be the duty of every employer to permit said examination to be made.

"Any employer who knowingly falsifies the reports required by this section shall be subject to the same penalty as that provided in the preceding section for failure to file the statement required by this section; and he shall also be liable to the State Fund for three (3) times the difference between the premium paid and the amount that he should have paid, which sum shall be collected in the same manner as that provided for the collection of the corresponding premiums in accordance with this Act, and covered into the State Fund.

"It shall not be necessary for the Manager of the State Fund to request the employers included under this Act to avail themselves of the benefits hereof, but it is the obligation of every employer of workmen or employees to perform such acts as may be necessary to comply, within the term fixed, with the obligation of insuring the compensation of the workmen employed by him in accordance with the provisions of section 18."

to permitting the petitioner to benefit and enrich itself as a result of its own fault, negligence, or mistake in not complying with the law.

It can not be rightly said that the State Insurance Fund will unjustly enrich itself if it is allowed to collect now what it should have collected formerly. In the first place, the failure to collect the premiums previously was not due to the fault or negligence of the manager, but to that of the company which failed to pay the wages in accordance with the Federal Act and at the right time. In the second place, the Fund is bound to pay the per diems and compensations to the injured workmen or to the beneficiaries of those who lose their lives in labor accidents, taking as a basis the wages that the workmen earned on the day of the accident. The manager fixed and paid per diems and compensations for accidents which occurred on petitioner's railroad, during the years 1938 to 1941, taking as a basis the payroll filed by the company for each one of said years. Alleging that the payments of overdue wages made in 1941 should be considered as made at the time when they should have been made, several workmen have moved for a readjustmen of the per diems and compensations which were granted to them on the basis of the payrolls filed by the company. Whether or not the claimant workmen are entitled to the readjustment sought is a question which has not been brought before us for decision, and therefore we shall not pass upon the merits of the same. But we do hold that the Fund has a right to be put in a position where it can meet the demands for said readjustments, in the event that a decision should be rendered in favor of the workmen.

■ Petitioner alleges that the Industrial Commission acted without jurisdiction in deciding that the act known as "Fair Labor Standards Act" is binding on the petitioner and applicable to all its workmen.

608

We find no pronouncement whatsoever made by the commission in the decision appealed from as to the applicability of the Federal Act to the American Railroad Company and its employees. The commission, in setting forth the facts, stated that the workmen had claimed unpaid wages to which they alleged to be entitled according to the Federal Act. And in explaining the theory of the manager, it stated that it was the latter's contention that the Federal Act was applicable to the petitioner.

Neither in its allegations before the commission nor in its brief filed with this court, has the petitioner raised the question of the applicabiilty of the Federal Act. The error assigned was not committed.

For the reasons stated the decision appealed from must be affirmed.

Mr. Justice Snyder did not participate herein.